## Commonwealth v. Taraborelli

*Jonathan Schiffman, Assistant District Attorney,* for Commonwealth.
*Gilbert J. Scutti,* for defendant.

ANDERSON, *J.,* May 11, 1979—The instant matter concerns a petition to dismiss the informations in the above-captioned case, filed by defendant, Vincent J. Taraborelli. An evidentiary hearing was held on March 14 and 19, 1979, before the undersigned.

Defendant was arrested on July 18, 1978, and charged with rape and related offenses. Following defendant's arraignment, defense counsel requested an opportunity to inspect clothing worn by the complainant, Helene Inglesby, during the incident, and which had been taken by the police the night of the incident.

The attorney for the defendant went to the Police Evidence Custodian, Room 715, City Hall, in late September or early October 1978, to examine the clothing. The clothing could not be found. The loss of the clothing is the basis for defendant's motion.

Defendant contends that "the true condition of

the complaining witness's clothing goes to the heart of defense counsel's ability to prepare and present a defense in this case. The complaining witness has already testified, and it is anticipated that she will testify at trial, that the defendant tore her clothing to shreds in the process of raping her, and, that, despite the opportunity to flee, she was prevented from doing so because her clothing was torn. Obviously, the true condition of Ms. Inglesby's clothing is of great importance to the defense inasmuch as it reflects upon Ms. Ingelsby's credibility in general and, more importantly, it furnishes insight into whether the sex acts alleged by the complainant were consensual, a defense that the defendant intends to interpose in this case."

Ms. Inglesby testified at the preliminary hearing that her bra, underpants, blouse and slacks had been ripped during the incident. She stated that after the assault defendant drove her to a house where he obtained a pullover shirt and a pair of slacks for her. Complainant was alone in the car for about five minutes while defendant obtained the clothes. Ms. Inglesby testified that one of the reasons she did not attempt to leave the car and run was because her clothes were "all ripped." Earlier in the testimony, Ms. Inglesby, in answer to defense counsel's characterization, agreed that her clothing had been "ripped to shreds." Complainant further testified that she removed her own bra, underpants, blouse and slacks, and put on the slacks and a pullover shirt given to her by defendant. She placed the discarded clothes on the front seat of the car. It is those clothes which are missing.

At the evidentiary hearing, Officer Louis J. Secreto testified that about 1:00 a.m. on July 18, 1978, he was on patrol in the 2400 block of South 66th Street, Philadelphia, Pa. Officer Secreto went

to investigate an occupied automobile parked in a tree-covered area of the highway. A young woman in the front passenger seat of the car, Helene Inglesby, indicated to him that the driver of the car, Vincent Taraborelli, had raped her. Officer Secreto removed defendant from the car and placed him under arrest.

Officer Secreto noticed the pile of women's clothes on the front seat of the car. He picked up the slacks and blouse, noticed that there was a white bra and a pair of pink underpants there also. He replaced the outer garments immediately. Officer Secreto recalled that the slacks and blouse were ripped. He was less certain about the underwear. He thought that the bra was torn in the center. In his incident report (the "48") prepared shortly after the incident, he noted that "The panties appeared to be ripped."

Lieutenant John Lanzelotti arrived at the scene after 2:00 a.m. He noticed the pile of women's clothing on the front seat of the car. He specifically noticed that the slacks were ripped.[1]

Detective Howard Gelfand was also at the scene. At about 2:45 a.m. he saw the pile of clothing on the front seat of the car. At the evidentiary hearing, he only recalled seeing the slacks and blouse. He remembered that the slacks were torn.

---

1. Lieutenant Lanzelotti then went to the 7200 block of Elmwood Avenue, which was allegedly the scene of the sexual assault. In a driveway between 7201 and 7205 Elmwood Avenue a ring with Ms. Inglesby's name and a piece of ribbon were recovered. The ribbon was later identified by her as having come from her blouse. The two items were put on a property receipt and were submitted to the police evidence custodian. Those items are available as evidence.

In the presence of Lieutenant Lanzelotti, the clothes, which were still on the front seat of the car, were photographed by crime laboratory personnel.

The photographs show that there is a long rip in a leg of the slacks. The exact condition of the remainder of the clothes, which are in a pile, cannot be determined from the photograph. However, neither the slacks nor the remainder of the clothes appear to be in "shreds."

Detective Charles Taylor was the assigned detective on the case. He collected the clothes from the front seat of the car in the presence of Lieutenant Lanzelotti. Detective Gelfand saw Detective Taylor with a plastic bag containing the clothes later that morning at Presbyterian Hospital. Still later that day, Detective Gelfand again saw the plastic bag with the clothes on the desk Detective Taylor was using at West Detective Division.

Detective Taylor prepared property receipt No. 707974 for the clothes. A copy of the property receipt was forwarded to the Police Department Evidence Custodian, Room 715, City Hall. However, the evidence itself was not received by the Evidence Custodian. It was Detective Taylor's responsibility to personally take the evidence to Room 715.

At the time of the incident, Detective Taylor was suffering from terminal cancer. He worked on and off until August 30, 1978, and died on October 28, 1978.

In preparation for the evidentiary hearing, Detective Gelfand instituted a search for the clothing. He checked with the Police Chemical Laboratory at the Police Administration Building. He personally searched Detective Taylor's drawers and all storage areas and the basement at West Detective Division. He contacted Mrs. Taylor and requested that

she search her home and car. The clothes were not found.

At the request of the court, a second, more thorough search was undertaken. The areas previously searched were researched. A visual inspection of Room 715 was undertaken and the personnel at West Detective Division, including cleaning personnel, were contacted. The clothing was not found.

The court concludes that the clothing was lost by Detective Taylor and that the loss was unintentional.

Defendant argues that because the evidence is lost, the informations must be quashed. In the alternative, he has suggested a "missing evidence charge." Defense counsel concedes that suppression of all mention of the evidence is not a viable alternative in this case.

This court has reviewed numerous cases dealing with the suppression or destruction of evidence. The threshold opinion is Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed. 2d 215 (1963), in which the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. This rule also applies to cases involving loss of evidence: Com. v. Chapman, 255 Pa. Superior Ct. 265, 386 A. 2d 994 (1978).

In United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392, 49 L.Ed. 2d 342 (1976), the United States Supreme Court defined materiality. In that case the prosecutor failed to disclose that the victim of a

knifing had a prior criminal record, including a history of assaults, which would have supported the appellant's argument that he acted in self-defense. The Supreme Court held that the non-disclosure did not deprive defendant of due process because the evidence not disclosed was not material. The court stated that the test of materiality of evidence is not the customary harmless error standard which would require that a new trial be granted unless the reviewing judge is sure that the "'error did not influence the jury, or had but very slight effect.'" Id. at 112. Instead the court stated the test of materiality as follows:

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." Id. at 112-13.

Obviously, in the instant case an examination of the "entire record" is not possible because the case has not yet been tried. Nevertheless, in determining what, if any, sanctions should be imposed upon the Commonwealth because of the loss of clothes,

an evaluation of the importance of the evidence in the context of the present state of the record must be made.

In deciding the instant matter, we are guided primarily by Com. v. Chapman, supra. In that case, appellant contended that the trial court erred in not granting a pre-trial motion for abandonment of the prosecution because the police custodian had discarded physical evidence after appellant's first trial on rape charges which therefore was not available after a new trial was granted. Chapman was convicted a second time although the victim's opportunity to observe her assailant was brief, and the results of an absorption inhibition test tended to exculpate the appellant. The Pennsylvania Superior Court evaluated every piece of missing evidence, including clothing of the complainant and the appellant, and concluded that, except for one item, the appellant was not deprived of the usefulness of the destroyed evidence because secondary sources, i.e., test reports or recorded observations, were available to demonstrate what appellant presumably would have demonstrated had the evidence not been destroyed. The court, however, remanded the case for an evidentiary hearing as to one piece of evidence. A pair of men's undershorts was found at the scene of the rape. When Chapman was arrested he was wearing no undershorts. The defense attorney contended that because of the destruction he was unable to prove that the shorts could not have fit defendant. The court held that in view of the extent of the exculpatory evidence presented at trial, the guilty verdict must have been based at least in part on the evidence that appellant was wearing no undershorts when arrested and

that men's undershorts were found at the scene.

Although the Pennsylvania Superior Court did not rely on United States v. Agurs, supra, its conclusion as to the materiality of the evidence is entirely consistent with the standard set forth by the United States Supreme Court.

In Chapman, the Superior Court refused to discharge appellant, holding that such a sanction would quite possibly be disproportionate to the police conduct in destroying the evidence. Instead, the court remanded the case for an evidentiary hearing, and to take testimony to determine what could be remembered about the shorts. If the testimony indicated that the shorts appeared to be appellant's then the judgment of sentence would be reinstated. If the testimony indicated that the shorts were not appellant's or no determination could be made, then defendant was to be granted a new trial. At such a new trial, the lower court was urged to consider two possible remedies: exclusion of all mention of the shorts (if the evidence about the shorts was inconclusive), or a "missing evidence instruction" (if appellant could have demonstrated that the shorts were not his).

It would appear from Chapman that the good faith of the government is irrelevant to a determination of whether or not there has been a violation of due process. However, the good faith of the government may be relevant in determining the sanction to be imposed.

Furthermore, before sanctions can be imposed for a good faith loss or destruction of evidence, such evidence must be potentially helpful to the defense and so important as to create a reasonable doubt of guilt; and the fact which is sought to be established

by the evidence must be incapable of proof by secondary means.[2]

In the instant case, it would appear that the evidence in question does not reach the level of materiality as compared with the undershorts in Chapman. The state of Ms. Inglesby's clothes is not essential to proving the offenses charged. The fact of intercourse is apparently not disputed nor is defendant's participation. The condition of the clothing only goes to complainant's credibility, especially concerning why she chose to remain in the car alone after the assault. Ms. Inglesby will undoubtedly testify at trial and she will be subject to cross-examination as to the state of her clothes.

---

2. See also Com. v. Mace, 234 Pa. Superior Ct. 463, 341 A. 2d 505 (1975), cert. denied 423 U.S. 996 (no error where tissue and other autopsy specimens destroyed; cause of death important issue; reports and expert witnesses available); Com. v. McGlory, 226 Pa. Superior Ct. 493, 313 A. 2d 326 (1973) (no error where drugs inadvertently destroyed or lost; oral testimony and scientific documentation available); Com. v. Cromartie, 222 Pa. Superior Ct. 278, 294 A. 2d 762 (1972) (demurrer improperly granted by trial court where marijuana and envelope containing marijuana destroyed by crime laboratory; reports and expert witnesses available); and United States v. Agurs, supra; United States v. Augenblick, 393 U.S. 348, 21 L.Ed. 2d 537, 89 S.Ct. 528 (1969); Government of Virgin Islands v. Testamark, 570 F. 2d 1162 (3d cir. 1978); United States v. Picariello, 568 F. 2d 222 (1st Cir. 1978); United States v. Harrison, 524 F. 2d 421 (D.C. Cir. 1975); United States v. Sewar, 468 F. 2d 236 (9th Cir. 1972), cert. denied 410 U.S. 916; United States v. Bryant, 439 F. 2d 642 (D.C. Cir. 1971), aff'd on remand 331 F. Supp. 927 (D.D.C. 1971), aff'd 448 F. 2d 1182 (D.C. Cir. 1971); United States v. Heath, 147 F. Supp. 877 (D. Hawaii 1957), appeal dismissed 260 F. 2d 623 (9th Cir. 1958); State v. Maloney, 105 Ariz. 348, 464 P. 2d 793 (1970); Trimble v. State, 75 N.M. 183, 402 P. 2d 162 (1965).

Moreover, secondary sources are available to describe the clothes. There is no reason to conclude at this point that Ms. Inglesby cannot or will not accurately describe the condition of her clothes. The condition of the slacks is also fairly clear from the photographs and the recollection of police witnesses. While the condition of the other articles of clothing is less certain from those sources, the fact that most of the police witnesses do not remember rips, is, if anything, helpful to the defense.

Finally, defendant, if he so chooses, can testify about the condition of the clothing and he can aid his attorney in the cross-examination of Ms. Inglesby and other witnesses.

We, therefore, conclude that at this stage in the proceedings, no sanctions should be imposed because of the loss of evidence. Should it appear at trial that the evidentiary value of the missing clothing proves to be greater and reaches the level of materiality envisioned by Agurs, and it also appears that the loss is detrimental to defendant's case, then the trial judge can take appropriate action in his instructions to the jury.[3]

## ORDER

And now, May 11, 1979, it is hereby ordered and decreed that defendant's motion to dismiss informations is denied.

---

3. As in Chapman, and in view of accidental and unintentional nature of the loss, dismissal of the charges is an inappropriate remedy. Defense attorney has conceded that suppression of all mention of the clothes is unacceptable because they are an integral part of defendant's case.