610 A.2d 32

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lewis DEANS, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 17, 1991.

Reargued Oct. 21, 1991.

Decided May 20, 1992.

John W. Packel, Peter Rosalsky, Philadelphia, for appellant.

Mary Benefield Seiverling, Deputy Atty. Gen., for appellee.

Karen Grigsby, amicus curiae, Philadelphia Dist. Atty.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which reversed the trial court order prohibiting expert opinion testimony as to the alleged forgery of a lottery ticket which the Commonwealth lost before trial. The question is whether appellant's due process rights under the federal Constitution require the exclusion of opinion testimony by the prosecution expert as to tests he performed prior to the loss of the ticket.

In January, 1984, appellant, Lewis Deans, presented an instant lottery ticket to a Philadelphia liquor store, claiming a $75,000 prize. He and the store manager completed and signed a claim form which they stapled to the ticket. Lottery officials denied the claim because the ticket had been cut and security information printed on the ticket referred to computer files establishing that it was not a prize-

winning ticket, and appellant was informed of this decision by certified mail. The ticket was submitted to revenue department investigators and the state police crime laboratory. A state police document examiner prepared a written report dated April 3, 1984, concluding that a foil portion of the ticket containing the $75,000 figure was "not an original integral part" of the ticket. Sometime after June 26, 1984, when the ticket was returned to the revenue department in Harrisburg, it was lost.

On August 11, 1987, the state attorney general's office filed a criminal complaint charging appellant with forgery, 18 Pa.C.S. § 4101,[1] for attempting to collect a $75,000 prize on an allegedly altered lottery ticket. A pretrial suppression motion was denied, but on the date scheduled for trial before a different judge, appellant filed a motion *in limine* again based on the fact that the Commonwealth had lost the lottery ticket. Following argument on the motion, the trial judge granted the motion in part, excluding testimony by the Commonwealth expert that the ticket had been altered. The Commonwealth certified that the order substantially handicapped the prosecution and filed an interlocutory appeal. The Superior Court reversed and remanded for trial. *Commonwealth v. Deans*, 388 Pa.Super. 521, 565 A.2d 1230 (1989). Appellant sought and was granted allowance of appeal to this court.

1. **18 Pa.C.S. § 4101. Forgery**
    (a) **Offense defined.**—A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
        (1) alters any writing of another without his authority;
        (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
        (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.
    (b) **Definition.**—As used in this section the word "writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and other symbols of value, right, privilege, or identification....

■ Appellant has raised a preliminary challenge to the right of the Commonwealth to appeal from an adverse evidentiary ruling on a motion *in limine*. The attorney general's office followed the procedure given limited approval in *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), applicable to adverse rulings on pretrial suppression motions, permitting Commonwealth appeals upon certification that the ruling substantially handicaps the prosecution, effectively putting the Commonwealth out of court. Appellant argues that the *Dugger* rule should not be extended to these circumstances, involving the grant of a motion *in limine* rather than a suppression motion. This precise argument was addressed and rejected in the companion case of *Commonwealth v. Cohen*, 529 Pa. 552, 605 A.2d 1212 (Pa.1992), holding that the Commonwealth may appeal a ruling such as the one in this case if it certifies that the order had the effect of terminating or substantially handicapping the prosecution. Superior Court, therefore, had jurisdiction of this appeal, and we must review its holding that the testimony of the Commonwealth expert, the state police document examiner, is admissible.

■ Appellant's position is essentially a restatement of the rationale of the trial court. In support of its prohibition of expert opinion testimony proffered by the Commonwealth, the trial court reasoned as follows. It was only after submitting the ticket to its expert for testing and evaluation that the Commonwealth lost the ticket, during a period when it was indisputably in the sole possession, custody, and control of the Commonwealth. Appellant never had the opportunity to have his own expert, or even his own counsel, examine the ticket. Appellant should not be obliged to accept the opinion of the prosecution expert, but should instead be permitted equal opportunity to conduct an expert examination. The Commonwealth alleged that the expert's report was essential to the prosecution; the same opportunity is equally essential to the defense. Due process requires a full opportunity to defend against the charges. Since the defense had no means whatsoever to

test the conclusions of the expert, exclusion of his testimony is the only way to insure due process.

The Commonwealth argues that the rationale of the Superior Court was correct. Superior Court relied on *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988), which held that, without evidence of bad faith on the part of the state, the due process clause of the federal Constitution had not been violated when the state failed to preserve potentially useful evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." To the Superior Court, it was of no consequence that the evidence not preserved in *Youngblood* was supplementary whereas the lost evidence in this case is the primary evidence in the case. The Superior Court also relied on our decision in *Commonwealth v. Hrynkow,* 457 Pa. 529, 330 A.2d 858 (1975), which permitted testimony regarding tests performed on the defendant's lost clothing, where he had a right to inspect lab reports offered in evidence and to cross-examine the testimony, and held that the situation was not a denial of the defendant's right to confrontation. Finally, the Superior Court stressed the fact that photocopies of the allegedly forged ticket are available to the defense, and such copies can be submitted to appellant's own experts for independent evaluation.

We do not believe that *Arizona v. Youngblood, supra,* controls this case. The prosecutor in *Youngblood* did not attempt to make use of incriminating evidence denied to the defendant. Both prosecution and defense were denied the use of "evidence" which was unavailable because no tests were conducted on samples until the passage of time made such testing futile.[2] There was no suggestion by the prosecutor that the missing evidence would have incriminated the defendant, and it was pure speculation by the defendant

2. It might be said that the "evidence" in *Youngblood* never existed; what was lost was merely the potentiality of producing evidence. If certain clothing had been refrigerated and if the refrigerated clothing had been subjected to sophisticated scientific testing, then evidence related to the blood type of the criminal might have been produced.

that the evidence, if it existed, might have exonerated him. In this case, however, the prosecutor conducted an examination and is attempting to introduce the results of his examination as evidence against the defendant while denying to the defendant any possible benefit to be derived from an examination of the primary evidence in the case. It is one thing to conduct a trial in which neither side has evidence because the prosecution failed to take affirmative steps to preserve it, and it is quite another to conduct a trial in which the prosecution has evidence but the defense does not because the prosecution lost it. In the former, *Youngblood*, situation, due process is not violated unless there was bad faith by the prosecution; in the latter, *Deans*, situation, to permit the prosecution to use the evidence would deprive appellant of due process irrespective of good faith or bad faith on the part of the prosecution.

We think, likewise, that reliance on *Commonwealth v. Hrynkow, supra*, is unwarranted. It, too, is fundamentally distinguishable from this case. We held in *Hrynkow* that a defendant was not denied the right to be confronted with the evidence against him when his clothing was lost before trial while the crime laboratory was being relocated, though the Commonwealth had scientifically analyzed the clothing and offered into evidence expert reports linking the defendant to the crime. The requirements of *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973), and the right of confrontation were satisfied by Hrynkow's inspection of the laboratory reports offered in evidence. The court limited its discussion to the appellant's claim that his right of confrontation was denied, and thus did not address the due process implications of the unavailability of the evidence.

This case differs from most other cases regarding lost evidence in that Deans' lottery ticket was lost before he was charged with committing an offense. At no time did he or defense counsel have an opportunity to examine the allegedly forged ticket. Other cases involve loss or destruction of evidence after a defendant had been arrested and charged with a crime, so that the defendant had opportunity to

request expert examination of the evidence on his own behalf but neglected such opportunity until after the evidence was lost. *See Hrynkow, supra* (lost clothing had been seized and analyzed after appellant's arrest); *Commonwealth v. Chapman,* 255 Pa.Super. 265, 386 A.2d 994 (1978) (evidence was destroyed after defendant's first trial and before retrial; defendant had not sought examination of the evidence while it was available); *Commonwealth v. Cromartie,* 222 Pa.Super. 278, 294 A.2d 762 (1972) (court rejected bald claim that defendant's right of confrontation was denied; defendant had never sought examination of missing evidence nor did he allege that it was exculpatory); *Commonwealth v. McGlory,* 226 Pa.Super. 493, 313 A.2d 326 (1973) (court rejected bald claim that defendant's right of confrontation was denied; defendant had never sought examination of missing evidence nor did he allege that it was exculpatory); *Commonwealth v. Watson,* 274 Pa.Super. 233, 418 A.2d 382 (1980) (defendant never sought testing of contraband, but objected to admission of lab test results without admission of contraband itself); *Commonwealth v. Gazal,* 185 Pa.Super. 91, 137 A.2d 814 (1958) (court rejected claim that failure to produce lost numbers slips violated best evidence rule; defendant did not claim that original numbers slips would have been exculpatory). An inference might be drawn that such defendants had no genuine belief that the evidence was exculpatory but felt safe in making such an allegation when the evidence was no longer available. Deans, on the other hand, never neglected an opportunity to seek analysis of the ticket to prepare his defense—he never had an opportunity since he was not arrested and charged with forgery until three years after the ticket was lost.

Our holding that expert testimony in this case would violate appellant's due process rights is, of course, based on the specific facts in this record. Loss of evidence need not preclude expert reports or testimony in every case. Results of tests conducted on different types of evidence will produce differing degrees of probability, sometimes amounting

almost to a certainty. Chemical analyses of blood, breath, and narcotic substances produce consistent, highly reliable results. By contrast, psychiatric examination pertaining to the existence, nature, duration, causes, and effects of alleged mental disease or defect may produce opinions which are much more subjective and conclusions which are much more likely to be inconsistent or contradictory. The issue of the authenticity of the lottery ticket in this case appears to be at least somewhat subjective.

This appears particularly likely in view of the Commonwealth's decision to submit the original ticket to a crime laboratory and an expert document examiner; the implication is that the alleged alteration was not obvious and would not have been readily apparent to laymen sitting as jurors. If the alleged alteration had been a sloppy "cut-and-paste" job, there would have been no need for expert analysis, since the original ticket itself would have convinced a jury that a forgery had been committed. Moreover, a photocopy is not a sufficient substitute for the original ticket, inasmuch as the original was not a simple piece of paper, but was intricately constructed of multiple layers and foil portions. The trial court decision suppressing the opinion of the Commonwealth expert specifically permitted the Commonwealth to use photocopies, yet the Commonwealth declined to proceed to trial on that basis, certifying that the order substantially handicapped the prosecution. In our judgment, expert analysis of a photocopy cannot suffice to determine the authenticity of the original missing ticket, so the Commonwealth's offer to permit defense experts to examine photocopies is of questionable value.[3]

For these reasons, we hold that the trial court was correct in ruling that admission of the prosecution expert's

---

**3.** There is no photocopy included in the record. Nevertheless, testimony indicates that an enlarged photocopy was entered in evidence at the preliminary hearing. We question the utility of such a document; needless to say, there are no foil portions to be examined, the ink cannot be analyzed, no comparisons of paper quality, color, texture, shading, or size can be made, there are no tears or cuts in the paper, the photocopy does not replicate the multiple layers of the original, etc.

report and testimony would violate appellant's due process rights under the federal Constitution. The judgment of the Superior Court must be reversed.

Judgment reversed.

McDERMOTT, J., files a concurring opinion in which LARSEN, J., joins.

CAPPY, J., files a concurring opinion.

McDERMOTT, Justice, concurring.

I join in the result reached by the majority without subscribing to any more than is necessary for decision. The appellant was charged three years after he presented an alleged forged lottery ticket. The Commonwealth, for whatever reason, could not produce the ticket he allegedly presented. The proof of forgery was not apparent on its face, and a photocopy did not disclose all the intricacies required for an expert opinion. The appellant was entitled to examine and test those intricacies and he could not without the original ticket: more need not be said.

LARSEN, J., joins in this Concurring Opinion.

CAPPY, Justice, concurring.

I concur in the result reached by the Majority that the Commonwealth is prohibited from presenting expert opinion testimony as to the alleged forgery of a lottery ticket which the Commonwealth lost prior to trial. However, I disagree with the Majority that the Commonwealth should be permitted an absolute right of appeal from an adverse ruling on a motion *in limine* upon the bare allegation of the District Attorney that the prosecution is substantially handicapped by that ruling. I do so for the same reasons I expressed in my concurring opinion in *Commonwealth v. Cohen*, 529 Pa. 552, 605 A.2d 1212 (1992).